

**SIGNED THIS 25th day of March, 2025**

_Rebecca B. Connelly_
Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

**THIS MEMORANDUM OPINION HAS BEEN ENTERED ON
THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **In re:** | **Chapter 7** |
| **JAMES ALAN ROSEN,** | **Case No. 23-61235** |
| **ROBIN LESLIE ROSEN,** | |
|     Debtors. | |
| | |
| **JAMES ALAN ROSEN,** | |
|     **Plaintiff,** | |
| **v.** | **Adv. P. No. 24-06016** |
| **TEXAS GUARANTEED STUDENT** | |
| **LOAN CORPORATION, d/b/a TRELLIS COMPANY,** | |
|     **Defendant.** | |

## MEMORANDUM OPINION

James Alan Rosen is 79 years old.[1]   He reopened his bankruptcy case to seek discharge of a student loan debt, arguing that not excepting the debt from discharge imposes an undue hardship on him and his spouse.[2]   After hearing the evidence at trial, considering the applicable provisions of the Bankruptcy Code, and applying the relevant case law, the Court agrees that excepting this student loan debt from discharge imposes an undue hardship on Mr. Rosen.   Accordingly, the student loan debt shall be discharged.   *See* 11 U.S.C. § 523(a)(8).

---

[1]      Mr. Rosen was born December 31, 1945.   Joint Stip. ¶ 10, ECF Doc. No. 20 (hereinafter "Joint Stip.").
[2]      Mr. Rosen and his wife, Robin Leslie Rosen, were granted a chapter 7 discharge on February 20, 2024. Joint Stip. ¶ 18.

*Jurisdiction*

This Court has jurisdiction over this bankruptcy case by the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.   This is a proceeding to determine the dischargeability of a student loan.   It is a core proceeding under 28 U.S.C. § 157(b)(2)(I)("determinations as to dischargeability of particular debts").

*Background*

Nearly 24 years ago, on September 19, 2001, Mr. Rosen obtained a parent PLUS loan for one of his two daughters to attend college.   Joint Stip. ¶ 1.   The parent PLUS loan was in the amount of $30,000.   *Id*.   The following week, on September 24, 2001, Mr. Rosen obtained another parent PLUS loan for his other daughter to attend college.   *Id*.   The second parent PLUS loan was in the amount of $15,000.   *Id*.   The following summer, on August 30, 2002, Mr. Rosen obtained a third parent PLUS loan for the same daughter to attend college.   *Id*. The third parent PLUS loan was in the amount of $15,000.   The total amount of the parent PLUS loans was $60,000.

Three years later, in 2005, Mr. Rosen applied to the Federal Family Education Loan program for a consolidation loan to replace the parent PLUS loans.   *See* Joint Stip. ¶ 2; Pl.'s Ex. 1 at 8, ECF Doc. No. 23-1.   Mr. Rosen obtained the consolidation loan in the amount of $58,733 at 4.25% interest with loan repayment to begin August 5, 2005.   *See* Pl.'s Ex. 1 at 8, ECF Doc. No. 23-1.[3]

Over 20 years, Mr. Rosen made loan payments, except during certain forbearances and

---

[3]    Exhibit 1 shows that payments on the consolidated loan were scheduled to begin on August 5, 2005. However, Exhibit 1 provides no end date or monthly payment amount.

deferments.

At one point, he had back surgery.   At another point, he had a heart attack followed by heart surgery.   And on top of that, he had additional back surgeries.   When he suffered these unexpected hardships, he contacted the student loan servicer, and it provided him a forbearance each time.   Documents introduced at trial provide Mr. Rosen's forbearance history.   *See* Pl.'s Ex. 4, ECF Doc. No. 23-4 (detailing the forbearance history).

The loan records also reflect many periods in which the loan was placed in deferment.   *See* Pl.'s Ex. 5, ECF Doc. No. 23-5.   The loan records reflect deferments beginning in 2014 and occurring periodically through 2022.   *See* Pl.'s Ex. 5, ECF Doc. No. 23-5.   For a period of time, Mr. Rosen enrolled in college classes.   During the hearing, Mr. Rosen explained that while he was enrolled in classes, the loan was automatically placed in deferment.

At trial, Mr. Rosen outlined his medical history including back surgeries, knee surgeries, hip replacements, shoulder replacements, and gastroesophageal reflux disease (GERD).   Mr. Rosen and Mrs. Rosen also described medical, dental, vision, and hearing needs that they have deferred because they do not have the financial resources to pay for the care.   During the hearing, Mr. Rosen recounted the history of his employment income and efforts to generate self-employment income.   Mr. Rosen's employment income ended in 2011.   After that time, he attempted consulting work, but it failed to generate income beyond the first two years.   At trial he spoke of stress-related health problems from his full-time prior employment and consulting efforts. He started a part-time job but after four months was unable to continue working due to the physical demands of the job.   He sought other forms of employment but was constrained by physical limitations, specifically his inability, by that time, to stand for long periods of time and lift more than ten pounds, coupled with his need to rest periodically throughout the day.

Still, between 2005 and 2022, despite experiencing frequent hardships, Mr. Rosen paid a total of $37,768.77 on the student loan. Joint Stip. ¶ 5. Initially, Mr. Rosen made regular monthly payments of $319.27 beginning September 19, 2005, and continuing until a forbearance in 2014. *See* Pl.'s Ex. 6 at 4–8, ECF Doc. No. 23-6. And thereafter, other than during the periods of forbearance or deferment between 2014 and 2022, Mr. Rosen made payments in amounts ranging from $326.39 to $841.14. *See id.* at 2–3. Ultimately, after periods of forbearance or deferment, the monthly loan payment amount adjusted to $420.54 in 2022. *See* Pl.'s Ex. 3 at 2, ECF Doc. No. 23-3.

During his testimony, Mr. Rosen described his growing inability to pay his household expenses during 2022. He found his household income insufficient to meet his household expenses. Around this time, Mr. and Mrs. Rosen moved to Virginia, among other reasons because the cost of living was less than where they had previously lived, according to Mrs. Rosen's testimony. Even so, Mr. Rosen was not able to make the $420.54 monthly payment on the consolidated student loan. Mr. and Mrs. Rosen turned to their daughters for support but, as Mrs. Rosen testified at trial, neither one of their daughters was, or is, able or willing to provide financial assistance. At the hearing, Mr. Rosen testified that it was "impossible to pay the amount [he] was being asked to pay." He contacted the servicer to ask about his options, because he could not afford the $420.54 monthly payment. *See* Pl.'s Ex. 11, ECF Doc. No. 23-11. According to the joint stipulation, in November 2022, Mr. Rosen enrolled in an income driven repayment program (IDR).[4] Joint Stip. ¶ 6. His payment in November 2022 based on the IDR was $216.03. *See* Pl.'s Ex. 3, ECF Doc. No. 23-3. Mr. Rosen made the IDR monthly payment of $216.03 until August 2023. *Id.* Less than three months later, Mr. Rosen filed bankruptcy.

---

[4]      The parties stipulate that the debtor entered into the IDR program "to repay the loan" yet it is unclear the IDR monthly payment amount could repay the loan given the balance of the loan and the interest rate.

*The Complaint*

On May 31, 2024, Mr. Rosen, through counsel, filed the complaint seeking discharge of his student loan debt.  *See* ECF Doc. No. 1.  After service of the complaint, Texas Guaranteed Student Loan Corporation, d/b/a Trellis Company ("Trellis" or "Defendant") answered the complaint.  *See* ECF Doc. No. 5.

After the parties completed discovery and submitted pretrial briefs, the Court held a trial. *See* ECF Doc. Nos. 17, 19, 21.   The Court heard testimony from Mr. Rosen and Mrs. Rosen.   *See* ECF Doc. No. 21.   The Court admitted into evidence Plaintiff's Exhibits 1 through 12 and Defendant's Exhibits A and B.[5]  *See id.*   After hearing the evidence and the arguments of counsel, the Court took the matter under advisement.   *See* ECF Doc. No. 22.

*The Arguments*

*Debtor insists he has shown repayment of the debt is an undue hardship*

Counsel for the debtor urges this Court to discharge the student loan debt because excepting it from discharge imposes an undue hardship on Mr. Rosen and his wife.   Mr. and Mrs. Rosen have no income other than social security and a modest pension in the fixed monthly amount of $511.   Joint Stip. ¶¶ 13–15.   Other than cost of living adjustments to the social security benefit, their income will not increase.   *Id.* ¶¶ 12–14.   Counsel for the debtor notes that even after adjusting the Rosens' living expenses, Mr. Rosen is unable to repay the student loan and maintain a minimal standard of living.   Given his age and health problems, his current state of affairs is likely to persist for the remainder of his life.   Yet despite the Rosens' troubles, Mr. Rosen has remained in regular communication with the servicer, and most importantly, has paid a significant amount on the loan.   He has paid $37,768.77 on the consolidated student loan (which loan was in

---

[5]    Defendant filed exhibits C, D, E, F, G, H, I, J, K, L, M, and N but did not move their admission to the record.

the original principal amount of $58,733). *Id.* ¶ 5. Counsel for the debtor noted that despite

paying $37,768.77, the balance of the loan has increased to $63,800.58 as of the date of the trial.

*See id.* ¶ 2; Pl.'s Ex. 2, ECF Doc. No. 23-2.

For these reasons, counsel argues the debtor has met the judicial "undue hardship test"

adopted by the Second Circuit Court of Appeals in *Brunner v. New York Higher Education*

*Services Corp.*, 831 F.2d 395 (2d Cir. 1987). That is, according to counsel for the debtor, Mr.

Rosen has shown that (i) he is unable to maintain a minimal standard of living for himself and

dependents if forced to repay the loan, (ii) additional circumstances indicate that the state of affairs

is likely to persist for a significant portion of the repayment period, and (iii) he has made a good

faith effort to repay the loan. *See Brunner*, 831 F.2d at 396. Having met the judicial test of undue

hardship, counsel for the debtor urges the Court to grant a discharge of the student loan debt

pursuant to Bankruptcy Code section 523(a)(8).

### *Defendant insists the debtor has not shown the three prongs of the undue hardship test*

Trellis argues the debtor has not met the demanding test necessary to discharge his student

loan debt. Trellis contends that Mr. Rosen has not shown two of the three required prongs of the

judicial undue hardship test set forth in *Brunner*. According to Trellis, Mr. Rosen has not shown

that he is unable to maintain a minimal standard of living if forced to repay the loan or that he has

made a good faith effort to repay the loan. For these reasons, according to Trellis, Mr. Rosen has

not met the judicial test to show undue hardship, and so the student loan debt should not be

discharged.

The parties stipulate that, as of the date of the trial, the IDR payment was $271.44. Joint

Stip. ¶ 6. The parties stipulate that the monthly income for Mr. and Mrs. Rosen in 2025 is

$6,143.09. *Id.* ¶ 16; *see also* Pl.'s Ex. 9 at 2, ECF Doc. No. 23-9. Mr. Rosen reported that the

monthly living expenses in 2025 for him and his spouse are $6,115.75.[6]   *See* Pl.'s Ex. 10, ECF

Doc. No. 23-10; Joint Stip. ¶ 17.   Trellis pointed out that after deducting the figure Mr. Rosen

reports for his monthly living expenses ($6,115.75), Mr. Rosen and his wife have approximately

$27.34 available as disposable income.   Hence, Mr. Rosen has excess income ($27.34), and so

Trellis argues that Mr. Rosen is not at a minimal standard of living.   Furthermore, Trellis

emphasized at trial that the debtor and his spouse have not made enough of an effort to reduce their

living expenses, because, for example, they have not sought an apartment with lower rent and

without garage parking.   Trellis also noted that the debtor has included in his budget a monthly

expense category of "miscellaneous expenses/emergency savings" in which the debtor reports a

monthly expense of $219.   If Mr. Rosen applied the amounts currently designated for emergency

needs and miscellaneous expenses plus the current disposable income amount of $27.34 to his

student loan, he could pay a monthly payment of $246.34.   Because Mr. Rosen did not move to

lower-cost housing or submit the funds currently budgeted for emergency needs and miscellaneous

expenses toward the student loan debt, Trellis argues that he has not met his duty to reduce or

minimize all of his expenses.   According to Trellis, this means Mr. Rosen has not met the

demanding test of *Brunner*.   For this reason, Trellis argues Mr. Rosen has not shown that the

student loan should be discharged.

*Analysis*

        This Court is asked to determine if excepting a student loan debt from discharge imposes

an undue hardship on the debtor and his dependents.   To answer the question, the Court will focus

on whether the debtor can repay the debt without undue hardship on him and his dependents.   This

means the focus is on repayment of the debt (that is excepted from discharge) through payments

---

[6] This expense amount does not include any amount for payment on the student loan debt.

that will repay the debt but not place the debtor in financial distress.

*The Applicable Law*

To begin with, the Code provides that a student loan debt[7] may be discharged when "excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). Section 523 does not describe duties, standards of living, or efforts to make nominal payments that will not repay the debt. Nor does it contain a three-part test or any statutory test. Section 523(a)(8) simply states a student loan debt is discharged when not excepting it from discharge would impose an "undue hardship on the debtor and the debtor's dependents." Although section 523 does not describe the phrase "undue hardship," in 2005, Congress added to section 524 of the Code language establishing that "it shall be presumed" that reaffirming an otherwise dischargeable debt (and rendering the debt in effect excepted from the discharge) "is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses . . . is less than the scheduled payments on the reaffirmed debt." 11 U.S.C. § 524(m)(1). This guidance for establishing a rebuttable presumption found in section 524 is a congressional expression of a distinction between a "hardship" and an "undue hardship."

Long prior to 2005, interpreting a different version of Bankruptcy Code section 523(a)(8), a district court laid out a judicial test for evaluating when excepting a student loan debt from the discharge was an undue hardship on the debtor and her dependents, and was affirmed by the court

---

[7]     The debt must be for
(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual.
11 U.S.C. § 523(a)(8).

of appeals.  *See Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987).

At this time, Congress had not expressed guidance for the phrase "undue hardship."  The *Brunner*

court established a test to fill the silence.  The district court opened its analysis observing "'undue

hardship' is undefined in the Bankruptcy Code."  *Brunner v. N.Y. State Higher Educ. Servs. Corp.*

*(In re Brunner)*, 46 B.R. 752, 753 (S.D.N.Y. 1985).  The Court deduced therefore "the adjective

'undue' indicates that Congress viewed garden-variety hardship as insufficient excuse for a

discharge of student loans," while noting "but the statute otherwise gives no hint of the phrase's

intended meaning."  *Id.*  The *Brunner* court went on to observe that Congress did not express its

intention for the phrase in the legislative history.  *Id.* at 753–54.  Instead, Congress lifted the

phrase "undue hardship" from the draft bill proposed by the Commission on the Bankruptcy Laws

of the United States.  *Id.* at 754.  "The Commission envisioned a determination of whether the

amount and reliability of income . . . which the debtor could reasonably be expected to receive in

the future could maintain the debtor and his or her dependents at a minimal standard of living as

well as pay off the student loans."  *Id.* (citing the Commission Report).  Noting the Commission

Report as imputed legislative history, the *Brunner* court crafted its test.  *See id.*

The *Brunner* test is in three parts.  If any one part of the test is not met, according to

*Brunner*, undue hardship has not been shown.  In this way, each part of the test is determinative

(lack of any part of the test is fatal to the query).  Many circuits, including the Fourth Circuit,

follow the *Brunner* test, having adopted it based on the pre-2005 language of the Bankruptcy Code.

*See Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 401 (4th Cir. 2005).[8]

---

[8]      *Frushour* was issued after the effective date of BAPCPA.  The opinion, however, was on appeal from a
decision entered by the bankruptcy court in a case filed prior to the enactment of BAPCPA.  Since the provisions of
BAPCPA did not apply to cases filed prior to October 17, 2005, the statutory language of section 524(m) was not a
consideration in the bankruptcy court's decision or in the subsequent decision on appeal.  The Fourth Circuit cites to
the 2000 edition of the United States Code.  *Frushour*, 433 F.3d at 398.

Some circuits do not apply the *Brunner* test. For example, the Eighth Circuit and the Bankruptcy Appellate Panel in the First Circuit have not adopted the *Brunner* test. *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 553 (8th Cir. 2003); *Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon)*, 435 B.R. 791, 800 (B.A.P. 1st Cir. 2010) (concluding "that Brunner takes the test too far"). Debtors in the Eighth and First Circuits establish "undue hardship on the debtor and the debtor's dependents" by showing a totality of factors in which no one factor is determinative. Unlike debtors outside the Eighth and First Circuits, these debtors are not compelled to meet a three-prong test in which absence of one prong is fatal (hence determinative).

As this Court is within the Fourth Circuit, this Court will apply the *Brunner* test until clarification from Congress or a change in the appellate precedent. Before doing so, the Court will recount some history.

Much of the history of Bankruptcy Code section 523(a)(8) and the *Brunner* decision was chronicled in this Court's opinion in *Bell v. U.S. Department of Education (In re Bell)*, 633 B.R. 164 (Bankr. W.D. Va. 2021). The history is important for at least two reasons: the statute has changed since the *Brunner* ruling and student loan repayment has changed since the *Brunner* ruling.

As originally enacted, section 523(a)(8) contained two bases for exception to the exception to discharge of certain student loan debt. *See* Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, § 523(a)(8), 92 Stat. 2549, 2591 (1978). First, under section 523(a)(8)(A), if the initial payment on the student loan debt became due more than five years before the debtor filed bankruptcy, the debt was dischargeable. Second, under section 523(a)(8)(B), if the initial payment on the student loan debt became due less than five years before bankruptcy, it was dischargeable only if excepting the loan from discharge would impose an undue hardship on the

debtor and the debtor's dependents.

Stated differently, the general rule was that section 523(a)(8)(A) "declare[d] such [student] loans nondischargeable for five years after they first came due, but § 523(a)(8)(B) create[d] an exception to the general rule if the failure to discharge would 'impose an undue hardship on the debtor and the debtor's dependents.'"   *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 46 B.R. 752, 753 (S.D.N.Y. 1985).   It was under this framework that the *Brunner* court considered whether a young debtor who sought to discharge student loans immediately after obtaining a graduate degree had shown that repayment of those loans was an undue hardship.

In 1998, Congress deleted subsection (A) of section 523(a)(8) in order to make the accompanying legislation budget neutral.[9]   *See* Higher Education Amendments of 1998, Pub. L. No. 105-244, § 971(a), 112 Stat. 1581, 1837 (1998); 144 Cong. Rec. H8978-02, H9082 (1998). This left only one basis for debtors to have their student loans determined dischargeable: proving an "undue hardship."

In 2005 Congress amended section 523(a)(8) again.   The 2005 amendments restructured the language, striking the then-existing (a)(8) in its entirety, and adding the following:

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

---

[9]      For a description of the weaknesses of budget modeling for student loans and accounting of uncollectible student loans as potential profit rather than expense, see Josh Mitchell, *Is the U.S. Student Loan Program Facing a $500 Billion Hole? One Banker Thinks So*, WALL ST. J., April 29, 2021, *available at* https://www.wsj.com/articles/is-the-u-s-student-loan-program-in-a-deep-hole-one-banker-thinks-so-11619707091.

Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) of 2005, Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005).   In addition to reordering the language, the amendments expanded the types of student loans subject to the discharge exception.   At this same time, Congress also expanded the provisions of section 524 and added a rebuttable presumption for determining "undue hardship" for reaffirming a debt.

It bears repeating, *Brunner* addressed how a debtor who files bankruptcy within five years of the date she is to make her first student loan payment would show that not discharging that student loan is an undue hardship on her and her dependents.   At the time *Brunner* was decided, Congress had not expressed an application of the phrase "undue hardship."[10]   The *Brunner* court was not confronted with a debtor seeking to discharge a loan he has been unable to pay over a 20-year period.   The *Brunner* court did not have the benefit of congressional amendments to the Code in which Congress provided guidance regarding the phrase "undue hardship" with respect to certain consumer debts voluntarily excepted from discharge.   Reliance on *Brunner* today must respect these obvious distinctions.

*Application of the* Brunner *Test to Mr. Rosen's Complaint*

*Prong One*

The first prong of the *Brunner* test requires that the debtor show "that [he] cannot maintain,

---

[10]      Faced with the absence of congressional expression explaining the phrase "undue hardship," some courts interpreted the insertion of the word "undue" before the word "hardship" in section 523(a)(8) to necessitate a showing of a certainty of hopelessness, an admittedly demanding requirement that only the most rare, dire, exceptional circumstances could meet.   *See, e.g.*, *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 401 (4th Cir. 2005); *Brightful v. Pa. Higher Educ. Assistance Agency (In re Brightful)*, 267 F.3d 324, 328 (3d Cir. 2001).   But Congress has since then added to the Code an expression of the phrase "undue hardship," albeit in a different section and not in section 523(a)(8).   In section 524(m)(1), Congress described a presumption (rebuttable) of "undue hardship" as arising when the debtor's monthly income is less than the debtor's monthly expenses (inclusive of the reaffirmed debt payment).   *See* 11 U.S.C. § 524(m)(1).   Congress's articulation of a presumption of undue hardship does not contain any expression requiring a showing of dire, extraordinary, hopeless, or exacting circumstances.   This statutory statement is contained in section 524 and applies in the context of a consumer debt consensually excepted from discharge through a reaffirmation process.

based on current income and expenses, a 'minimal' standard of living for [him]self and [his] dependents if forced to repay the loans." *Brunner*, 831 F.2d at 396.   In other words, the Court must consider if the debtor's current income and expenses allow the debtor to repay the loan and maintain a minimal standard of living.

This Court has previously observed that if a debtor's current budget does not reflect frivolous or unnecessary spending, yet is unbalanced, the debtor has met prong one of the *Brunner* test.   *Bell*, 633 B.R. at 176.   Trellis notes that the debtor does not have an unbalanced budget because he shows positive net monthly income of $27.34.   Furthermore, Trellis argues that Mr. Rosen is not living at a "minimal standard of living."   Finally, Trellis suggests that because the debtor has "unallocated excess" labeled as "savings for unexpected emergencies," he has not met the first prong.

This Court disagrees.

The language of prong one requires the Court to consider current income and expenses and whether the debtor can maintain a minimal standard of living "if forced to repay the loans."   The question therefore is whether the debtor, based on his current income and expenses, can afford the loan payments necessary to repay the loan ("if forced to repay the loan").[11]

In considering the budget for the debtor and his wife, the Court is persuaded by the testimony of the debtor and his wife that the expenses disclosed reflect ordinary and necessary household expenses for individuals of their age.   The expenses are not frivolous.   The evidence at trial showed that the apartment was in a safe location sufficient to accommodate Mr. Rosen's physical limitations (need for accessibility accommodations, elevator access, and no stairs), and

---

[11]    The *Brunner* court observed, "it is not unreasonable to hold that committing the debtor to a life of poverty for the term of the loan—generally ten years—imposes 'undue' hardship."   *Brunner*, 46 B.R. at 754.

further that Mr. Rosen had sought, and obtained, a reduction in the rent increase.[12]   Although

Trellis argued in closing that Mr. and Mrs. Rosen had "high rent . . . for this community," no

evidence was shown to substantiate the statement.   Instead, Mr. and Mrs. Rosen testified about

the handicap and sleeping accommodations they need and how their current apartment meets these

needs.   Above all, however, Mr. Rosen and his wife provided support for their need for apartment

living that does not require use of stairs and parking that does not have curbs.   They showed that

these needs limit their housing options.   The Court is satisfied that the debtor has shown the rental

expense is reasonable.   What is more, Mr. Rosen showed through his testimony that relocating

would impose liabilities that he and his wife are unable to pay such as a security deposit, lease

damages for breach by early termination, and the cost for movers, packing services, and supplies.

The evidence showed that Mr. Rosen is budgeting for "unexpected emergencies and

miscellaneous expenses" because he and his spouse have deferred medical, dental, eye, hearing,

and personal care that requires expenditures not currently included in their budget.   Mr. Rosen

described some of these miscellaneous and unexpected needs including prescriptions, over the

counter supplements, hearing aids, and supplies such as a raised toilet seat when he could not use

a standard toilet after surgery.   More importantly, the budget currently does not account for the

student loan payment.   Adding a student loan payment sufficient to repay the loan to the current

budget will render the budget unbalanced.   Mr. Rosen and his wife simply cannot make the

student loan payment given their current income and expenses without neglecting their health,

safety, and maintenance.

The parties did not provide the Court in their pleadings or at hearing with a payment amount

and term that would be necessary for Mr. Rosen to repay the student loan debt in full.   The parties,

---

[12]      During his testimony, Mr. Rosen noted that he approached his landlord for accommodation and obtained a
reduction in the annual rent increase.   He did not identify when this occurred.

however, stipulate that the current IDR payment is $271.44, and the daily interest is $7.2387.   This

daily interest figure computes to at least $220.1771 interest per month.   Accordingly, if the debtor

paid $271.44, he would pay approximately $220.1771 in interest and the balance ($51.26) would

be applied to principal (with these amounts adjusted thereafter).   If he did not miss any payments,

and if no interest accrued, it would take Mr. Rosen 235 months, or almost 20 years, to repay the

student loan debt in the amount of $63,800.58.   With the accrual of interest, the true repayment

term would be much longer.   In other words, for the monthly payment of $271.44 to repay the

debt requires more than 20 years of regular, unmissed payments.   But adding $271.44 to Mr.

Rosen's budget renders it unbalanced.   He cannot pay $271.44 monthly and maintain ordinary,

necessary, reasonable living expenses.

Trellis argues that Mr. Rosen can instead pay $246.34 each month, assuming he has no

emergency needs, unexpected expenses, or miscellaneous costs.   If Mr. Rosen paid $246.34 each

month, and if no interest accrued, it would take 259 months or almost 22 years to repay the debt.

With the accrual of interest, the repayment would be longer.   For the monthly payment of $246.34

to repay the debt requires more than 22 years of regular, unmissed payments and would assume

Mr. Rosen would live beyond 102 years of age.   And importantly, Mr. Rosen could not pay

$247.34 each month and provide for his and his wife's health needs, let alone ordinary, necessary,

and reasonable living expenses.

Mr. Rosen's attempts to increase his income through employment, consulting, and family

assistance have failed.   Mr. Rosen's income is limited to social security and a fixed pension of

$513 per month.   Mrs. Rosen's income is limited to social security.   Their future monthly income

will only change by cost-of-living adjustments.

As such, Mr. Rosen cannot maintain a minimal standard of living if forced to repay the

loan.   The conclusion does not change even if this Court were to consider the stipulated figure labeled as the IDR payment ($271), or the figure Trellis contends Mr. Rosen could pay ($246).

*Prong Two*

Prong two of the *Brunner* test requires the debtor to show "that additional circumstances exist indicating that [the debtor's] state of affairs [under prong one] is likely to persist for a significant portion of the repayment period of the student loans."   *Brunner*, 831 F.2d at 396.   The test directs a court to consider (1) the debtor's current circumstances; (2) additional circumstances indicating the current circumstances will remain or persist; and (3) whether those circumstances are likely to persist during a significant portion of the remaining term of the loan.   Plainly, this prong requires the Court to consider the "remaining term of the loan" to evaluate whether the debtor's financial constraints will persist during "a significant portion" of that repayment term.

To aid the Court in evaluating additional circumstances indicating the current circumstances will remain or persist during a significant portion of the remaining term of the loan, the Court will consider Mr. Rosen's education, professional licenses, breadth of employment history, and efforts to supplement his retirement income.   *See generally Frushour*, 433 F.3d at 401.   The Court will apply the relevant gauges to Mr. Rosen.

Mr. Rosen is college educated and has a law degree, having graduated from law school in 1970.   Joint Stip. ¶ 11.   During testimony he elaborated upon his background.   He was licensed in Washington, D.C. and Pennsylvania.   He worked as a government attorney and then in-house for the Penske Corporation.

Mr. Rosen retired in 2009, after which he worked for two years (in 2010 and 2011) as a consultant for Penske.   In 2009, Mr. Rosen suffered a heart attack, received a stent, followed by bypass surgery.   Within two years, he required a second stent.   During this time, he also suffered

from stress related illness.   Mr. Rosen testified that the consulting income from Penske diminished in 2011.

Mr. Rosen described himself as "knowing a lot about wine."   After consulting for Penske, he pursued consulting work related to his wine knowledge, but he was unable to realize income from his services.   In 2015, Mr. Rosen landed work at a specialty wine and grocery store.   After four months, Mr. Rosen was unable to continue in the job.   At this time, Mr. Rosen's back condition prevented him from standing for a long period of time, or lifting forty pounds, both of which were required by the job.

When Mr. Rosen and his wife moved to Charlottesville, Mr. Rosen sought employment with the local wineries but again was unsuccessful.   By this time, Mr. Rosen was 76 years old and was now unable to lift more than ten pounds or stand for long periods of time.

Mr. Rosen described losing his investments ("our investments turned out not successful"), depleting his savings, and selling personal property as a means to provide income.   Mr. Rosen made efforts to obtain additional income after retirement yet has been unsuccessful.

In evaluating whether Mr. Rosen's current circumstances will persist during a significant portion of the remaining term of the loan, the Court must consider Mr. Rosen's age and the remaining term of the loan.   He will turn 80 later this calendar year.   The remaining term of the loan is unfixed.   Trellis suggests the debtor should pay from $27 to $246 per month, and the parties stipulate the IDR payment is $271.   This calculates to a remaining term of the loan of more than 20 years.   Over the next 20 years, between age 79 and age 99, it is likely Mr. Rosen's inability to obtain employment or consulting income will persist (as he ages, he is unlikely to be able to stand longer or lift more weight than he can now, both of which are physical challenges currently preventing him from employment).   Meanwhile, as he progresses into his 80s and 90s, his daily

care needs may increase, not decrease.

Mr. Rosen's income is fixed.   Mr. Rosen and his wife's current income is inadequate to permit Mr. Rosen to repay the loan without neglecting health, safety, and household needs.

The Fourth Circuit has said that this part of the "undue hardship" test requires the debtor to show a "certainty of hopelessness" that he will not be able to repay the loan.   *See, e.g.*, *Frushour*, 433 F.3d at 401; *Bell*, 633 B.R. at 176–77.   This language directs a court to consider the reasons the debtor is unable to pay the debt during the term of the loan and whether such reasons are certain, rather than merely likely, to persist.   *Bell*, 633 B.R. at 176–77.   As this Court previously explained,

> *Brunner* directs a court to consider "the likelihood" that the debtor's current circumstances will remain not indefinitely but during "a significant period of the remaining term of the loan."   In other words, under the *Brunner* test, the debtor is not required to prove that his circumstances will not ever improve.   Mindful that the directive from this Circuit is to apply the *Brunner* test, this Court interprets the standard of "certainty of hopelessness" for the undue hardship requirement to necessarily pertain to whether it is a "certainty of hopelessness" that the debtor will not be able to repay the debt, not whether it is a "certainty of hopelessness" that a debtor's financial balance sheet will not at some point improve.

*Id.* at 177.   Putting it together, the Court's focus is upon the reasons the debtor cannot currently repay the debt, the reasons the financial hardship will persist, and whether it is futile that the debtor will be able to pay the debt during the remaining term of the loan.

In this case, the debtor showed that the circumstances causing his inability to repay the loan were based on his medical history, current medical condition, and accessibility limitations which restrict his ability to supplement his social security income with consulting or employment income.   His education, prior professional license, and prior employment have not enabled him to increase his income at this stage of his life.   The Court is satisfied the debtor in this case has shown efforts to supplement his income, yet he has been unsuccessful in improving his financial

condition enough to permit repayment of the debt.   The Court must evaluate whether these circumstances causing the debtor's current inability to repay the indebtedness are likely to remain or persist during a significant portion of the repayment period.   Obviously, the repayment period is critical, as is the debtor's age and consequent life expectancy, to this inquiry.

Mr. Rosen's physical limitations now prevent him from standing for long periods of time or lifting over ten pounds.   He has been unable to find employment that would permit him to avoid lifting or standing.   Mr. Rosen has suffered from heart attacks and internal health conditions causing him to need rest periodically throughout the day.   Unable to obtain employment to generate income, Mr. Rosen has depleted his savings and resorted to selling personal property to cover his living expenses.   The Court is satisfied that the reasons Mr. Rosen is unable to repay the debt will persist.   The second prong is satisfied.

Mr. Rosen's case differs significantly from *In re Spence*, a well-known case within this circuit in which the district court for the Eastern District of Virginia concluded that the debtor's age did not constitute an additional circumstance under prong two "where she does not have any 'age-related illnesses that affect her ability to work.'"   *Educ. Credit Mgmt. Corp. v. Spence (In re Spence)*, 341 B.R. 825, 828–29 (E.D. Va. 2006)[13] (quoting *Chapelle v. Educ. Credit Mgmt. Corp.*, 328 B.R. 565, 572 (Bankr. C.D. Cal. 2005)).   Unlike Mr. Rosen, the debtor in *Spence* was in her mid-60s, in good health, had no age-related illnesses or impediments limiting employment prospects, had graduated only five years earlier, and acknowledged she intended to work for fifteen more years.   *Id.*   She offered no "additional circumstances which indicate an inability to maintain a minimal standard of living" other than her age.   *Id.* at 828.   By contrast, Mr. Rosen showed the

---

[13]      The *Spence* ruling was issued after the effective date of BAPCPA but was on appeal from a decision entered by the bankruptcy court in a case filed prior to the enactment of BAPCPA.   Since the provisions of BAPCPA did not apply to cases filed prior to October 17, 2005, the statutory language of section 524(m) was not a consideration in the bankruptcy court's decision nor in the subsequent decision on appeal.

presence of age-related conditions that affect his ability to work, such as the inability to use stairs,

lift more than ten pounds, stand for long periods of time, plus a heart condition and hearing loss.

Mr. Rosen also noted that he depleted his savings and liquidated personal property to generate

disposable income.   These circumstances differ from those of Ms. Spence and show that Mr.

Rosen's inability to repay the debt will persist.

Through his uncontroverted testimony, Mr. Rosen showed that he has met prong two of

the *Brunner* test.   Trellis did not contest that he had.   The Court agrees.   Mr. Rosen has met

prong two.

The next part of the inquiry is whether Mr. Rosen has made a good faith effort to repay the

loan.

*Prong Three*

Under prong three of the *Brunner* test, the Court must consider if the debtor has made a

good faith effort to repay the indebtedness.   The debtor contends he has.   Trellis contends he has

not.

The debtor points to his payment history reflecting regular payments from 2005 until a

hardship in 2014, followed by irregular payments until 2023 (over 22 years).   The student loan

was frequently placed in forbearance or deferment.   In 2022, when Mr. Rosen could not make

loan payments, Mr. Rosen's payment was amended to an amount based on an "income driven

repayment" plan option which placed the loan "in repayment" through a modified payment amount

that did not pay the principal of the loan.   Mr. Rosen testified that he is required to recertify his

income every year as a condition for the IDR program.

Trellis argues that Mr. Rosen has not made a good faith effort to repay the loan when he has not reduced his living expenses and is not currently offering to use funds budgeted for future unexpected emergencies to make payments to Trellis.   The Court disagrees.

Mr. Rosen's consolidated student loan has a current balance (as of the trial) of $63,800.58 and carries interest at 4.5%.   With daily interest on the loan of $7.2387 (as stipulated by the parties),[14] interest on the loan consequently amounts to $220.1771 per month.   As long as Mr. Rosen pays a sufficient interest payment, the loan balance should not continue to grow, yet that interest payment certainly will not repay the debt.   Making an interest payment is not a means to "repay" the debt unless the interest payment is accompanied by a principal payment.   The *Brunner* test references *repayment* of the debt, not a minimum monthly amount that may keep the loan in a "repayment" status but will not repay the debt.

During the past 22 years, Mr. Rosen consolidated the student loans, made payments amounting to over 64% of the original principal amount of the consolidated loan, and stayed in communication with the loan servicer, including seeking payment options from the student loan servicer.   Meanwhile he pursued employment opportunities, made some adjustments to his expenses, deferred health care needs, depleted his savings, and resorted to liquidating personal property to increase his disposable income and pay for his living expenses.   And he is now nearly 80 years old with declining health, deferred health care needs, and little property.   It is hard to find that he has not made a good faith effort to repay the loan under these facts.

*Conclusion*

An advanced age, by itself, may not prove undue hardship.   But Mr. Rosen's undue hardship is not simply his advanced age.   Not only is Mr. Rosen elderly, but he has chronic

---

[14]     Joint Stip. ¶ 8.

physical restrictions limiting his accessibility, plus he has medical and care expenses that are likely to increase more than his income is likely to increase.

Mr. Rosen and his wife's current financial circumstances do not permit repayment of the student loan without neglecting health, safety, and household needs.   These circumstances are likely to persist for a significant portion of the repayment period.   Mr. Rosen has made a good faith effort over 23 years to repay the debt.    All three prongs of the *Brunner* test are satisfied.

Stepping back to the Code as applied to Mr. Rosen's student loan, it appears he has shown repayment is an undue hardship.   Mr. and Mrs. Rosen's monthly income less their monthly expenses is not enough to repay the student loan debt in full.    The payment labeled as his "income driven repayment" amount is insufficient to repay the student loan debt, particularly given most (if not all) of the monthly payment will go toward interest.    Even if he could manage to make the payment under the IDR program, it will not pay off the student loan debt.    Based on Mr. Rosen's circumstances and bearing in mind the language of the Code and its history, the Court is satisfied Mr. Rosen has shown repayment of the student loan debt is an undue hardship on him and his wife.

The Court concludes that excepting the student loan debt from discharge imposes an undue hardship on Mr. Rosen and his wife.   Pursuant to section 523(a)(8) of the Bankruptcy Code, the debt is discharged.   The Court will issue an order.

The Clerk is directed to send a copy of this Memorandum Opinion to the plaintiff, counsel for the plaintiff, and counsel for the defendant.